Mr. Clifford Repperger, Jr. Cape Coral Assistant City Attorney Post Office Box 150027 Cape Coral, Florida 33915-0027
Dear Mr. Repperger:
On behalf of the city manager, you have asked substantially the following questions:
1. Does a franchise agreement allowing a public utility to locate on a public easement with no provision for liability for relocation expenses preclude the application of section 337.403, Florida Statutes, when the city requires relocation?
2. Does section 337.403, Florida Statutes, apply to the relocation of all utilities or only those placed on easements or rights-of-way granted by the governing body?
3. Are cable television facilities considered a utility subject to section 337.403, Florida Statutes?
In sum:
1. While a franchise agreement for placement of a public utility on a public easement creates a property right that may entitle the owner or holder to compensation when such right is dispossessed, section 337.403, Florida Statutes, controls the assessment of relocation expenses when a utility must be moved for a reason prescribed therein.
2. Section 337.403, Florida Statutes, applies only to the relocation of utilities placed upon, under, over, or along any public road or publicly owned rail corridor owned by a governing body in fee or in which the governing body has an easement.
3. While cable television is not specifically included in the definition of a utility subject to section 337.403, Florida Statutes, there is nothing that grants such facilities greater protections than utilities enumerated therein and the definition is broad enough to encompass cable television. In light of the statutory requirement of a franchise agreement for cable television facilities placed on a right-of-way, however, the more prudent course would be to address relocation expense liability in the franchise agreement.
Question One
You state that the City of Cape Coral has a franchise agreement with the Lee County Electric Cooperative (cooperative) for the operation of an electric utility within the city. According to the agreement, the cooperative may "construct, maintain and operate an electric utility in, over, upon, under and across present and future streets, alleys, avenues, easement for public utilities, highways, bridges, canals, and other public places of the [c]ity . . . ." You indicate, however, that the agreement does not address who will be responsible for relocation expenses when the city requires a relocation of electric facilities. In light of the requirements in section 337.403, Florida Statutes, you question whether the utility or the city is responsible for relocation expenses.
Section 337.403, Florida Statutes, provides:
"(1) Any utility heretofore or hereafter placed upon, under, over, or along any public road or publicly owned rail corridor that is found by the authority to be unreasonably interfering in any way with the convenient, safe, or continuous use, or the maintenance, improvement, extension, or expansion, of such public road or publicly owned rail corridor shall, upon 30 days' written notice to the utility or its agent by the authority, be removed or relocated by such utility at its own expense except as provided in paragraphs (a) and (b)."[1]
When it becomes necessary for a governmental authority to remove or relocate a utility pursuant to this section, the owner of the utility or the owner's chief agent must be given notice and an order requiring the payment of such removal or relocation.[2] The utility then has a reasonable time (not less than 20 nor more than 30 days) in which to contest the reasonableness of the order and is entitled to an adjudication of the removal or relocation of the utilities pursuant to Chapter 120, Florida Statutes.[3]
There is some question, however, that a franchise agreement creates a property right that may not be dispossessed without just compensation being paid. In Pinellas County v. General TelephoneCompany of Florida,[4] the Second District Court of Appeal considered whether the county was liable for the costs of moving the utility's telephone lines from property that the county had acquired from the City of St. Petersburg. In that case, the utility had maintained its lines through a city-maintained alleyway pursuant to a franchise agreement with the city. The county acquired the property for construction of a county judicial building and requested the utility to remove its lines. The utility declined to do so unless compensated by the county for the cost of relocating the lines. The court concluded that the franchise agreement between the city and utility constituted a property right of which the utility could not be deprived without the payment of just compensation.[5]
You point out that the Pinellas court did not cite to specific language in the franchise agreement and posit that the rationale of the opinion may not, therefore, be applicable to the present situation. In that case, however, the utility was being dispossessed of its franchise right by the proposed use of the property for something other than an inconvenience upon the alleyway or its expansion or improvement. The county could not have properly claimed the rights of having the utility pay for the relocation of its lines under the statute, when the reason the lines had to be relocated did not fall within those prescribed in the statute.
In a similar case, the Fourth District Court of Appeal considered whether a telephone company should bear the cost of relocating its lines when a private developer elected to extend a public road for its private benefit.[6] Noting that the dispute was between the utility and a private party, not the county, the court looked to a previous decision from a companion court and its conclusion that the relocation expense statute "applies only to circumstances where a public body or authority elects to take action requiring utilities facilities relocation."[7] It was concluded that the developer, rather than the telephone company, would have to bear the cost of relocating utilities resulting from the widening of a road, when no public authority had initiated the road improvement but, rather, such expansion was made by the developer for its private benefit.[8]
The statute applies to relocation of utilities necessitated by the particular instances set forth therein — utilities unreasonably interfering with the convenient, safe, or continuous use, or the maintenance, improvement, extension, or expansion of a public road or publicly owned rail corridor. Moreover, placement of the burden of paying the cost of utility relocation depends upon whether the improvement or alteration of the roadway is initiated by the public authority or some other party.
Accordingly, while a franchise agreement for placement of a public utility on a public easement creates a property right that may entitle the owner or holder to compensation when such right is dispossessed, the relocation of a utility pursuant to section337.403, Florida Statutes, for a reason prescribed therein does not constitute a taking for which the governing authority must pay.
Question Two
The plain language of section 337.403(1), Florida Statutes, makes it applicable to "[a]ny utility heretofore or hereafter placedupon, under, over, or along any public road or publicly ownedrail corridor. . . ." (emphasis supplied). Where the Legislature has provided those things upon which a statute will act, it is ordinarily construed as excluding from its operation all things not expressly mentioned.[9] For purposes of the Florida Transportation Code, Chapter 334 inclusive,[10] a "[r]oad" is defined as
a way open to travel by the public, including, but not limited to, a street, highway, or alley. The term includes associated sidewalks, the roadbed, the right-of-way, and all culverts, drains, sluices, ditches, water storage areas, waterways, embankments, slopes, retaining walls, bridges, tunnels, and viaducts necessary for the maintenance of travel and all ferries used in connection therewith.[11]
Section 334.03(22), Florida Statutes, defines "[r]ight-of-way" to mean "land in which the state, the department, a county, or a municipality owns the fee or has an easement devoted to or required for use as a transportation facility." Transportation facility is defined as "any means for the transportation of people and property from place to place which is constructed, operated, or maintained in whole or in part from public funds. The term includes the property or property rights, both real and personal, which have been or may be established by public bodies for the transportation of people and property from place to place."[12]
Considering all of these definitions, it would appear that the rights-of-way or roads subject to section 337.403, Florida Statutes, are those owned in fee or in which there is an easement held by a governing body. This narrowly prescribed definition, however, would not include parking lots or other publicly owned property upon which a vehicle may incidentally be present. While this office has concluded that the term "public street or high-way" includes a pay public parking garage at a county airport for purposes of traffic control jurisdiction pursuant to Chapter 316, Florida Statutes, the definition of a "street or highway" in that chapter is more expansive than the definition of a "public road" in the Florida Transportation Code.[13]
Accordingly, it is my opinion that section 337.403, Florida Statutes, applies only to roads and adjacent rights-of-way owned by a governing body in fee or in which the governing body has an easement.
Question Three
Section 337.401, Florida Statutes, authorizes the Department of Transportation and local governing entities, referred to as the "authority," to prescribe and enforce reasonable rules and regulations regarding the placement and maintenance of utilities along, across, or on any public road or publicly owned rail corridor. For purposes of the statute, the Legislature has designated a "utility" as being the following: electric transmission, telephone, or telegraph lines; pole lines; poles; railways; ditches; sewers; water, heat or gas mains; pipelines; fences; gasoline tanks and pumps; or other structures.
Cable television facilities are not included in the specific terms set forth as comprising a utility. The general term "other structures," however, may be interpreted to include facilities comparable to or in the same class as those enumerated.[14]
Moreover, section 337.4061, Florida Statutes, makes it unlawful to use the right-of-way of any state-maintained road for cable service purposes within an area subject to a valid existing franchise for cable service, unless the cable system using the right-of-way holds a franchise from the municipality or county for the area in which the right-of-way is located.[15]
You have not directed my attention to any statutory provision exempting cable television facilities from the definition of a utility for purposes of liability for relocation expenses under Chapter 337, Florida Statutes. Moreover, there is no indication that cable facilities should be afforded greater protection from the payment of relocation expenses than afforded other utilities. Absent legislative or judicial clarification expressly excluding cable television facilities from the definition of a utility for such purposes, it would appear that cable television systems may logically be included. In light of the requirement that cable television facilities be located on rights-of-way pursuant to a franchise agreement with the local governing body, the more prudent course would be to include relocation expense liability within the terms of the agreement.
Accordingly, it is my opinion that cable television facilities are subject to the relocation provisions in section 337.403, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 337.403(1)(a) provides for the payment of relocation of utilities by the state when relocation is necessary due to construction of a project on the federal-aid interstate system and the cost is approved for reimbursement by the federal government. Subsection (b) of s. 337.403 provides for a sharing of the cost of relocation by the Florida Department of Transpor-tation when a joint agreement is executed between the utility and the department.
[2] See, s. 337.404(1), Fla. Stat.
[3] Id. See also, s. 337.404(3), Fla. Stat., allowing the owner of a utility to obtain judicial review of the final order of the authority in the circuit court in the county in which the utility was relocated.
[4] 229 So.2d 9 (Fla. 2d DCA 1969).
[5] In Pinellas County v. General Telephone Company of Florida,
the court was considering the application of ss. 338.17-338.21, Fla. Stat. (1969), the precursors to section 337.403, Fla. Stat.
[6] See, Oriole Homes Corporation v. BellsouthTelecommunications, Inc., 641 So.2d 504 (Fla. 4th DCA 1994).
[7] Century Construction Corporation v. Central TelephoneCompany of Florida, 370 So.2d 825 (Fla. 1st DCA 1979).
[8] 641 So.2d at 504.
[9] See, Thayer v. State, 335 So.2d 815, 817 (Fla. 1976) (where a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily construed as excluding from its operation all things not expressly mentioned).
[10] Section 334.01, Fla. Stat., designates chapters 334-339, 341, 348, and 349 and ss. 332.003-332.007, 351.35, 351.36, 351.37, and 861.001, Fla. Stat., as the "Florida Transportation Code."
[11] Section 334.03(23), Fla. Stat.
[12] Section 334.03(31), Fla. Stat.
[13] Section 316.003(53), Fla. Stat., defines "street or highway" as follows:
"(a) The entire width between the boundary lines of every way or place of whatever nature when any part thereof is open to the use of the public for purposes of vehicular traffic;
(b) The entire width between the boundary lines of any privately owned way or place used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons, or any limited access road owned or controlled by a special district, whenever, by written agreement entered into under s. 316.006(2)(b) or (3)(b), a county or municipality exercises traffic control jurisdiction over said way or place;
(c) Any area, such as a runway, taxiway, ramp, clear zone, or parking lot, within the boundary of any airport owned by the state, a county, a municipality, or a political subdivision, which area is used for vehicular traffic but which is not open for vehicular operation by the general public; or
(d) Any way or place used for vehicular traffic on a controlled access basis within a mobile home park recreation district which has been created under s. 418.30 and the recreational facilities of which district are open to the general public."
And see, State v. Lopez, 633 So.2d 1150 (Fla. 5th DCA 1994), in which the district court concluded that a parking lot open to the public, but not publicly maintained, was within the statutory definition of streets and highways, subjecting vehicular traffic to police regulation.
[14] See, Florida Police Benevolent Association, Inc. v.Department of Agriculture and Consumer Services, 574 So.2d 120
(Fla. 1991) (doctrine of "ejusdem generis" requires that general terms in statute be construed in manner consistent with more precise terms associated with them).
[15] Section 337.4061(2), Fla. Stat.